UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HATTIE BRAXTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 4:13-cv-1335-JCH |
| | ) | |
| DKMZ TRUCKING , INC., | ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC, | ) | |
| and KENT BIVENS | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Joint Motion to Bar Testimony and Opinions of Plaintiff's Neuropsychologist, Thomas Martin, (ECF No. 69), and Plaintiff Hattie Braxton's Motion to Exclude Expert Testimony and Opinions of C. Brian Tanner, P.E. (ECF No. 68). The motions have been fully briefed and are ready for disposition.

## BACKGROUND

Braxton initiated this action by filing a Complaint on July 12, 2013. (Complaint, ECF No. 1). She later filed an Amended Complaint, which alleges that Braxton was struck by a tractor-trailer while driving on a Missouri freeway. (Amended Complaint, ECF No. 5, ¶¶ 1, 15). The tractor-trailer was driven by Defendant Kent Bivens, who "was, at all times, acting as an employee and/or agent for Defendant DKMZ and Defendant FedEx." *Id.* ¶¶ 16, 18. Both Braxton and Defendants wish to introduce expert testimony at trial to support aspects of their cases. Braxton proffers as an expert witness Dr. Thomas Martin, a neuropsychologist retained by Braxton to "identify her current neuropsychological status" following the crash. (Martin Report, ECF No. 69-1, at 1). Defendants wish to introduce as an expert witness C. Brian Tanner, P.E.

1

(Braxton Motion, ECF No. 68, at 1). Tanner is a biomechanical engineer retained to testify regarding the causation of Braxton's injuries. (Tanner Aff., ECF No. 72-1, ¶¶ 1-9, 15-17). In their motions, the parties seek to exclude or limit the testimony of each other's expert witness.

## **EXPERT ADMISSIBILITY STANDARD**

"'Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court . . . .'" *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (quoting *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296 (8th Cir. 1996)). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). The starting point for analyzing the admissibility of expert testimony is Federal Rule of Evidence 702, which has been interpreted to require district courts "to perform a 'gatekeeping' function and insure that proffered expert testimony is both relevant and reliable." *Dancy v. Hyster Co.*, 127 F.3d 649, 651-52 (8th Cir. 1997); *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

The Eighth Circuit has identified three prerequisites, based on the language of Rule 702, for the admissibility of expert testimony:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . .

*Lauzon*, 270 F.3d at 686 (internal quotation marks and citations omitted). This standard must be applied in light of the fact that "Rule 702 reflects an attempt to liberalize the rules governing the

admission of expert testimony[,]" and "[t]he rule clearly is one of admissibility rather than exclusion." *Lauzon*, 270 F.3d at 686 (internal quotation marks omitted).

## DISCUSSION

*I. Defendants' Motion to Exclude Testimony of Dr. Thomas Martin*

Defendants seek "to exclude the expert testimony of Thomas Martin, Plaintiff's expert neuropsychologist, because the testimony and test results fail to meet the reliability requirements set forth in *Daubert*, and its progeny." (Defendant Motion, ECF No. 69, at 1). Defendants contend that Dr. Martin could not reliably have made his psychiatric diagnoses of Post-Traumatic Stress Disorder ("PTSD") and depression not otherwise specified ("DNOS") because he relied primarily on a "neuropsychological battery of tests" and a brief interview of Braxton, during which Braxton's boyfriend was present. *Id.* at 3-5. Because the neuropsychological tests could not have been the basis for these psychiatric conclusions, Dr. Martin's diagnoses rest primarily on his interview with Braxton, which was insufficient. *Id.* at 8.

Braxton responds that Defendants' "arguments do not go to the *admissibility* of Dr. Martin's opinions, but to the *weight* of his opinions and testimony." (Braxton Response, ECF No. 71, at 1 (emphasis in original)). Braxton contends that neuropsychologists often make diagnoses of a psychiatric nature, and that the line Defendants draw between the two disciplines is unfounded. *Id.* at 3-5. Braxton also cites Dr. Martin's report and deposition to show that he relied on the standard methods and diagnoses listed in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). *Id.* at 3-4. According to Braxton, the DSM is generally relied on "to diagnose patients' mental conditions and disorders[,]" and Dr. Martin's diagnostic methods are therefore reliable. *Id.* at 4.

3

*Daubert* introduced four non-exclusive factors that district courts may examine to determine the reliability of an expert's testimony: "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." *Peitzmeier*, 97 F.3d at 297 (quoting *Daubert*, 509 U.S. at 593-94). "*Daubert*'s progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon*, 270 F.3d at 687. The application of these factors, along with others that might bear on the reliability analysis, should be flexible, in accordance with the liberalizing purpose of Rule 702. *See Daubert*, 509 U.S. at 594.

Dr. Martin indicated in his deposition that he relied on the fourth edition of the DSM in performing his evaluation of Braxton. (Martin Deposition, ECF No. 71-2, at 7, p. 37). This is corroborated in his report, in which he makes use of three "axes" in his diagnosis that correspond to the diagnostic categories used in the various editions of the DSM. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 27 (4th ed., Text Revision 2000) ("DSM-IV-TR"); (Martin Report, ECF No. 71-3, at 5-6). As Braxton notes in her Response, the DSM "'is the standard classification of mental disorders used by mental health professionals in the United States. It is intended to be applicable in a wide array of contexts and used by clinicians and researchers of many different orientations (e.g., biological, psychodynamic, cognitive, behavioral, interpersonal, family/systems).'" (Braxton Response at 4 (quoting Am. Psychiatric Ass'n, http://www.psychiatry.org/practice/dsm (last visited Feb. 5, 2015))). Dr. Martin also indicated during his deposition that the methods he used to diagnose Braxton for purposes of this

litigation are substantially the same methods he would have used in a non-litigation setting. (Martin Deposition at 4, p. 18). These two factors, the use of established diagnostic criteria in a manner not specific to the litigation context, are sufficient to establish the reliability of Dr. Martin's testimony.[1] Dr. Martin will therefore be permitted to testify as an expert, and Defendants are free to test any perceived inadequacy on cross-examination.

Defendants' reference to *Discepolo v. Gorgone*, 399 F. Supp. 2d 123 (D. Conn. 2005), is unhelpful. In *Discepolo*, the defendants sought to exclude the testimony of Dr. Anne Pratt, a psychologist who was to testify regarding the plaintiff's PTSD, in part on the ground that the method she used in diagnosing the plaintiff was unreliable. *Id.* at 124, 126. The court noted that Dr. Pratt took the following steps in making her diagnosis:

> Dr. Pratt interviewed plaintiff over the course of two days for a total of approximately six hours, and interviewed plaintiff's current boyfriend and two of plaintiff's childhood friends. Dr. Pratt also administered three psychological tests: the Personality Asessment Inventory ("PAI"); the Trauma Symptom Inventory ("TSI"); and the Detailed Assessment of Posttraumatic Stress ("DAPS"). In addition, Dr. Pratt reviewed medical, counseling, and psychotherapy records, school records, and the deposition transcripts of plaintiff, plaintiff's mother and father, defendant, and Dr. Colleen Keller Dreyfus, Ph.D., who treated plaintiff.

*Id.* at 125 (internal citations omitted). Based on Dr. Pratt's use of these steps and other factors, the *Discepolo* court concluded "that the methodology for the PTSD diagnosis and the scope of Dr. Pratt's opinion are not excludable as unscientific or unreliable." *Id.* at 129.

Defendants contend that because Dr. Martin did not take these steps in diagnosing Braxton with PTSD, his testimony should be barred under *Daubert*. (Defendant Motion at 5-7). The problem with Defendants' contention is that it mistakes sufficiency with necessity. While the *Discepolo* court found that Dr. Pratt's testing was reliable under *Daubert*, it did not hold or

---

[1] Even variations from DSM diagnostic criteria have been found to be within the range of expert testimony that is most appropriately tested by cross-examination. *E.g.*, *S.M. v. J.K.*, 262 F.3d 914, 921-22 (9th Cir. 2001).

otherwise indicate that a deviation from those steps would mean the testing was unreliable. Nor did it give any indication of what the boundaries of reliability might be. *Discepolo* therefore provides little guidance as to whether Dr. Martin used reliable methods for diagnosing Braxton with PTSD.

*II. Braxton's Motion to Exclude Testimony of C. Brian Tanner, P.E.*

Braxton seeks to exclude or limit the testimony of C. Brian Tanner, P.E., who has been retained by Defendants to testify as to the cause of Braxton's injuries, because "Mr. Tanner has no formal medical training, he is not a medical doctor, nor is he qualified by training, experience or skill to render opinions regarding the medical causation of Ms. Braxton's injuries." (Braxton Motion at 2). While Braxton seems in her Motion to be seeking the complete exclusion of Tanner's testimony, she makes clear in her Reply that she objects only to Tanner's testimony regarding specific causation. (Braxton Reply, ECF No. 73, at 3). Braxton would therefore allow Tanner "to testify as to the forces exerted in the collision based on his evaluation, and the types of injuries that may result from exposure to those forces, but he may not offer opinions as to whether the forces exerted in this accident specifically caused Mr. [*sic*] Braxton's injuries . . . ." *Id.*

Defendants respond that "Tanner does not attempt to offer any opinions concerning the diagnosis of [Braxton], and he does not offer any testimony concerning course of treatment, or prognosis. Rather, Tanner provides biomechanical opinions, which he is qualified to do through his training and education." (Defendants' Response, ECF No. 72, at 4). Defendants support this assertion with specific references to Tanner's education and experience. *Id.* at 4-5. They then explain the methods Tanner used in reaching his conclusion and that those methods are ones typically used in the field of biomechanical engineering. *Id.* at 6-8.

6

There is no meaningful disagreement between the parties regarding the permissible scope of Tanner's testimony. Braxton contends that Tanner may testify only to general, rather than specific, causation. Defendants assert that they do not intend for Tanner to testify regarding specific medical causation. Moreover, the limitation Braxton has requested is appropriate under *Daubert*. *See, e.g.*, *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 301 (6th Cir. 1997), *abrogated on other grounds by Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 515 (6th Cir. 1998). Tanner will therefore be permitted to testify as to general causation insofar as it is within his competency as a biomechanical engineer, but he will not be permitted to testify as to the specific medical causes of Braxton's injuries.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion to Bar Testimony and Opinions of Plaintiff's Neuropsychologist, Thomas Martin, (ECF No. 69), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Hattie Braxton's Motion to Exclude Expert Testimony and Opinions of C. Brian Tanner, P.E., (ECF No. 68), is **GRANTED IN PART**, and Tanner will not be permitted to testify as to the specific medical causation of Braxton's injuries.

Dated this 13th   Day of February, 2015.

/s/  Jean C. Hamilton
UNITED STATES DISTRICT JUDGE